# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERT BINKELE,

    Plaintiff,

v.

ADAM J. AUSLOOS,

    Defendant.

Case No. 19-CV-249-JPS

**ORDER**

**1. INTRODUCTION**

 **1.1 Procedural Background and Motion for Default Judgment**

This case arises from a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding that Defendant Adam J. Ausloos ("Ausloos") brought against Plaintiff Robert Binkele ("Binkele") and Binkele's firm, Centaurus Financial, Inc. ("Centaurus"). Binkele filed suit in this Court seeking declaratory and injunctive relief to preclude the FINRA arbitration proceeding against him on the grounds that (1) the parties never agreed to a FINRA arbitration; (2) Ausloos was never one of Binkele's customers; and (3) Ausloos is no longer associated with a FINRA member, therefore he cannot bring a FINRA claim against Binkele. (Docket #1 at 1).

On March 1, 2019, Ausloos's attorney accepted service on behalf of Ausloos. (Docket #4). That same day, Binkele filed a motion for preliminary injunction to prevent Ausloos from proceeding on his FINRA arbitration. (Docket #5). On March 22, 2019, Binkele filed a motion for entry of default, which the clerk entered, and a motion for entry of default judgment. (Docket #9). Four days later, Ausloos submitted an answer and a motion to set aside the entry of default. (Docket #10 and #11).

The Court has discretion to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). In order to set aside a default, Ausloos must show "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994). So long as Ausloos "did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence," good cause exists. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (citing *Passarella v. Hilton Int'l Co.*, 810 F.3d 674, 677 (7th Cir. 1987)). Additionally, "[t]his Circuit has a well established policy favoring a trial on the merits over a default judgment." *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007); *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014).

Ausloos explains that his attorney failed to respond in a timely fashion due to a misunderstanding. His attorney had previously requested an extension of time to respond to the preliminary injunction motion, but forgot to request an extension of time to respond to the complaint, and operated under the assumption that the extension of time applied to both responses. When his attorney realized the error, he promptly filed the motion to set aside default. Three days later, he filed a robust opposition to the motion for preliminary injunction, in which he argued that FINRA is the appropriate arbitration body because Ausloos purchased an unregistered security from Binkele, and is therefore a "customer" within the meaning of FINRA Rule 12200.

Ausloos's attorney's inadvertence does not constitute willful ignorance of the pending litigation. *Cracco*, 559 F.3d at 631. Ausloos also responded quickly and thoroughly to the motion for default judgment, and the defense presented, at this juncture, seems to have merit. Accordingly,

the Court will grant Ausloos's motion to set aside the entry of default, and deny Binkele's motion for entry of default judgment. (Docket #9 and #11).

### 1.2 Underlying Dispute

Binkele owns a company called Estate Planning Team, Inc. ("EPT"). He is also a registered representative of Centaurus and a member of FINRA. Ausloos is the managing member of a company called Tax Deferral Trustee Services, LLC ("TDTS"). In March 2017, Ausloos, on behalf of TDTS, contracted with EPT to use EPT's tax and estate planning solutions within a geographical area for an initial fee of $125,000.00. These "trust and estate planning solutions" that EPT licensed to TDTS consisted of Deferred Sales Trusts ("DSTs").[1] TDTS was tasked with acting as a trustee and managing the trusts pursuant to EPT's rules. (Docket #6-3 at 3–4); (Docket #13-1 at 31–32). Additionally, depending on the number of paying members that TDTS originated for EPT in a particular year, the license for exclusive use in a specific geographical area would continue year to year. (Docket #13-1 at 30–31); (Docket #6-3 at 2–3).

There are two versions of the sublicense agreement. The March 22, 2017 contract (the "March 22 Contract") provides that EPT would close at least $55,000,000.00 in assets with TDTS every year. (Docket #13-1 at 31). The March 31, 2017 contract ("March 31 Contract") does not contain this language. *See* (Docket #6-3 at 3). The March 22 Contract was only signed by Ausloos, and is the version that Ausloos evidently has in his possession. (Docket #13-1 at 36–37). The March 31 Contract was counter-signed by

---

[1] DSTs are tax avoidance tools that typically contain the proceeds from an asset that would be otherwise subject to capital gains taxes. Rather than pay the capital gains taxes, beneficiaries of DSTs receive incremental payments from the proceeds, which are taxed at lower rates.

Binkele. Ausloos's writing in the March 22 and March 31 Contracts is identical, suggesting that Ausloos only signed one contract, (likely the March 22 Contract), and that certain pages were later swapped out to create the March 31 Contract.[2]

Ausloos claims that the contract itself, though fashioned as a sublicense agreement, is actually for an "unregistered security," whereby Ausloos paid EPT (or Binkele) $125,000.00 in exchange for EPT's promise of a guaranteed investment income of $275,000.00. (Docket #13 at 3). Ausloos claims that this income was guaranteed by the contract's promise of a return on investment of 50 basis points per dollar of DSTs assigned to him by EPT, and by EPT's promise, in the March 22 Contract, to annually close $55,000,000.00 with TDTS. *Id.* However, such income never materialized, and Ausloos began to suspect that something was amiss.

Both contracts contain identical "Arbitration/Jurisdiction" provisions, which provide that

> any dispute arising out of, in connection with, or by reason of this Agreement or the performance of any party hereto contemplated hereunder, or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved. . .shall be resolved by confidential binding arbitration before Judicial Arbitration and Mediation Service ("JAMS"). . .Each party hereto hereby agrees to submit to the jurisdiction of any state or federal court sitting in Clark County, Nevada, in any action or

---

[2] Compare the March 31 Contract (Docket #6-3 at 7, 9) with the March 22 Contract (Docket #13-1 at 36, 37). Also note the original ink on the March 22 Contract and the multiple scan marks on the right-hand margin of the March 31 Contract.

> proceeding arising out of or relating to the enforcement of the arbitration provisions of this Agreement and agree [sic] not to bring any such action or proceeding in any other court.

(Docket #13-1 at 35–36)[3]; (Docket #6-3 at 7–8).

On December 14, 2018, Ausloos submitted a FINRA Complaint stating that Binkele (through his company EPT) and Centaurus are selling "an unregistered security" that fraudulently purports to have "a guaranteed return every month." (Docket #1-2 at 1). Ausloos alleges that Binkele continues to sell the unregistered security, via this sublicense agreement, to people while fraudulently misrepresenting the returns and having "no intention to perform the guarantee returns." *Id.*

**2. VENUE**

The doctrine of *forum non conveniens* permits a court, in its discretion, to dismiss an action over which it has proper jurisdiction when there is an adequate alternative forum in which the case may be more conveniently heard. *Kamel v. Hill–Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). A *forum non conveniens* analysis typically requires the court to evaluate and weigh the private interests of the litigants and the public interests of the forum to determine whether litigating the case in the alternative forum would serve the convenience of parties and witnesses and otherwise promote the interests of justice. *See id.*; *see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013).

The *forum non conveniens* analysis changes, however, when the parties' contract contains a valid forum-selection clause, because the clause represents the parties' agreement as to the proper forum and thus its

---

[3]Pages are scanned out of order.

enforcement "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co.*, 571 U.S. at 63 (quotation omitted). Importantly, under those circumstances, the plaintiff's choice of forum merits no weight. Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Binkele has offered no explanation why he could not have filed this suit in the bargained-for District of Nevada, or why that forum was inappropriate.

In this circuit, if a contract contains a choice of law clause and the court sits in diversity, then "the law designated in the choice of law clause would be used to determine the validity of the forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014); *Abbott Lab. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007). In this case, both versions of the contract state that the agreement "shall be governed by and construed in accordance with the laws of the State of Nevada." (Docket #6-3 at 7); (Docket #13-1 at 36). Therefore, this Court will apply the laws of Nevada to determine whether or not the forum selection clause is valid.

To determine whether a forum selection clause is valid and applies to a particular dispute, Nevada courts first assess whether the parties intended for the specific dispute to be subject to the forum selection clause. *Tuxedo Intern. Inc. v. Rosenberg*, 251 P.3d 690, 697 (Nev. 2011) (citing *Berrett v. Life Ins. Co. of the SW*, 623 F. Supp. 946, 948–49 (D. Utah 1985)); *LV Car Serv., LLC v. AWG Ambassador, LLC*, 2018 WL 1989571, at *1–2 (Nev. Apr. 25, 2018); *see also Am. First Fed. Credit Union v. Soro*, 459 P.3d 105, 106 (Nev. 2015) (explaining that appellate courts will enforce a contract provision when it is clear and unambiguous as written). If that does not resolve the issue, Nevada courts next consider whether resolution of the dispute

requires interpretation of the contract—if so, then "then the claims are within the scope of the forum selection clause." *Tuxedo Intern. Inc.*, 251 P.3d at 699. "Because the intent of the parties must be discerned through a review of the language of the subject forum selection clause. . .the district court must conduct a thorough and detailed review of the language of that provision." *Id.* at 697.

Here, both contracts proffered contain a forum selection clause that specifically states that,

> Each party hereto hereby **agrees to submit to the jurisdiction of** any state or federal court sitting in **Clark County, Nevada in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions** of this Agreement and **agree [sic] not to bring any such action or proceeding in any other court**. Each party hereto hereby agrees to waive any defense of inconvenient forum to the maintenance of any action or proceeding so brought in Clark County, Nevada[.]

(Docket #6-3 at 7–8); (Docket #13-1 at 35–36) (emphasis added). The relevant issue in the complaint is whether FINRA or JAMS is the appropriate forum for Ausloos's dispute against Binkele. This action, therefore, "arises out of [and] relat[es] to the enforcement of the arbitration provisions." *Id.*

It is also clear, by the plain language of the provision, that the parties intended to have such arbitration-related disputes heard by the courts in Clark County, Nevada. *Tuxedo*, 251 P.3d at 697; *Berrett*, 623 F. Supp. at 948–49. Both parties' versions of the contract contain this exact language, and the provision itself is unambiguous. Additionally, the agreement "not to bring any such action in any other court" renders the clause mandatory, meaning that the parties did not envision another court hearing these

actions. *Am. First Fed. Credit Union*, 359 P.3d at 108. Therefore, the Court finds that the provision is valid: both parties intended to agree to the provision, and the provision clearly applies to arbitration disputes such as this one. Any state or federal court in Clark County, Nevada would be the proper forum to decide whether the dispute should go before JAMS or FINRA, and whether the proceeding before FINRA ought to be enjoined.

3. **CONCLUSION**

For the reasons explained above, the Court will dismiss this case without prejudice for improper venue. Pursuant to the terms of the contract, Binkele may re-file the action in a state or federal court in Clark County, Nevada.

Accordingly,

**IT IS ORDERED** that Adam J. Ausloos's motion to set aside entry of default (Docket #11) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Robert Binkele's motion for entry of default judgment (Docket #9) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of June, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge